Tina NEWTON and Carla Ferguson, Co–Administratrices of the Estate of Clara Sanders, Appellants,

v.

James NEWTON, Appellee.

No. 2010–CA–001877–MR.

Court of Appeals of Kentucky.

Aug. 19, 2011.

Discretionary Review Denied by Supreme Court May 16, 2012.

Andrew J. Horne, Louisville, KY, for appellants.

Jason P. Floyd, Bardstown, KY, for appellee.

Before CAPERTON, COMBS, and, THOMPSON, Judges.

## OPINION

CAPERTON, Judge:

The Appellants are representatives of the Estate of Clara Sanders. Sanders was slain by Appellee, James R. Newton, who was convicted on a plea of guilty for reckless homicide. At issue between the par-

ties is a title dispute between the Estate and Newton over the property they held jointly with right of survivorship.

On May 20, 2007, Sanders was on the premises she and Newton owned in joint tenancy with right of survivorship.[1] The two had lived on the property together as unmarried cohabitants for some time. On that date, they had thrown a party for Sanders's grandchild. According to Newton, Sanders became intoxicated and belligerent, and Newton attempted to restrain her. While doing so, Newton recklessly choked and held Sanders down, resulting in her death. Newton was criminally charged in her death and subsequently pled guilty to reckless homicide, a class D felony. Newton was sentenced to five years' imprisonment, which he has now served.

The Estate thereafter filed the case *sub judice* in the Nelson Circuit Court seeking damages for the wrongful death[2] of Clara Sanders and for Newton's forfeiture of the farm real estate pursuant to KRS 381.280.

The Estate moved for summary judgment asserting that, pursuant to KRS 381.280, Newton's conviction for a felony with regard to Sanders's death had the legal effect of his predeceasing her, thereby resulting in the Estate's being able to seize all joint property held between the two with a right of survivorship. The trial court denied that motion, finding that Newton was entitled to half of the property and the Estate to the other half.[3] This appeal followed.

█ The Estate argues that pursuant to KRS 381.280, Newton forfeited all of his interest in and to the property shared between him and Sanders. The Estate argues that KRS 381.280 has been universally interpreted such that the slayer is considered to predecease the victim. In so arguing, the Estate asserts that the trial court erred in relying on *Heuser v. Cohen,* 655 S.W.2d 9, 10 (Ky.App.1982), which it asserts contradicts the holding of our Supreme Court in *Bates v. Wilson,* 313 Ky. 572, 574–75, 232 S.W.2d 837, 838 (1950).[4]

1. On July 16, 2004, L.C. Geoghegan and his wife, Valla H. Geoghegan, executed a deed which transferred real property to Sanders and Newton to be held "for and during their joint natural lives, with the remainder in fee simple to the survivor of them."

2. The wrongful death claim was settled as evidenced by an agreed order of partial dismissal dated April 7, 2010.

3. Procedurally, the court initially entered a September 9, 2009, order in which it made the following determinations: (1)that pursuant to KRS 381.280, Newton was precluded from taking any interest as a surviving joint tenant in the real property at issue; (2)that as a result, the real property would be taken as follows: (a)one-half of the real property to Newton, and (b)one-half of the real property to the heirs-at-law of Sanders, (3)that the motion to lift a temporary restraining order was denied; and (4)that the Court would be willing to place the real property into receivership. In the same September 9, 2009, order, the court denied the Estate's motion for par-

tial summary judgment in regard to its argument that Newton had forfeited all of his interest in the real property due to his conviction for reckless homicide.

On August 4, 2009, the parties had requested sixty days to determine whether they could resolve this action. If no resolution was made, the Court advised the parties that it would take the following action: (1)that the property would be placed in receivership so that it could be sold forthwith, (2)that the sale proceeds would then be placed in the hands of the Nelson Circuit Clerk because the Estate intended to appeal the court's interpretation of KRS 381.280, and (3) that the court would enter a final order so that the Estate could pursue its appeal.

The parties could not come to an agreement. As a result, the court entered an October 8, 2010, order finalizing its previous order of September 9, 2009.

4. The issue addressed was whether a grandchild might inherit from deceased grandparents an interest in property which her father

In *Heuser*, the trial court, following *Bates*, held that the heirs of a woman murdered by her husband took all the proceeds of the insurance policy on the home the woman held jointly in the entirety with her husband. On appeal, this Court decided that on the basis of equity, the slayer would retain half the interest in the property and the victim's heirs would retain the other half. The Estate asserts that applying the holding in *Heuser* to the matter *sub judice* would allow Newton to benefit from killing Sanders. Accordingly, it argues that the circuit court erred in relying upon *Heuser* and should be reversed.

In response, Newton argues that as he and Sanders were not married, the nature of the ownership of the property was not a marital tenancy by the entireties but instead a scenario in which each party was half-owner of the undivided property. Newton argues that his one-half share of the real estate was not Sanders's property, and that, therefore, KRS 381.280 should not cause a forfeiture of that share. To the contrary, Newton asserts that the only interest he should forfeit is the interest that would have passed by survivorship which, in the case of joint tenants with right of ownership, is a life estate with a survivorship interest. Newton states that as a result of Sanders's death, her heirs succeeded to her life estate and survivorship interest as if they were tenants in common instead of the interest passing by

survivorship to Newton, as it would have done otherwise. However, he argues that he should not have to forfeit his own individual interest in the property, despite conceding that the statute requires him to forfeit his rights of survivorship.

Newton distinguishes *Bates, supra,* by asserting that in that case, unlike the case herein, the accused defendant had no interest in the property of the decedent. He argues that the son who murdered his parents in *Bates* was a beneficiary under the parents' will and had only a contingent interest, at best. Ultimately, Newton argues that KRS 381.280 was designed to prevent killers from profiting as a result of their own misdeeds but was not designed to strip from them additional property to which they otherwise had a right of ownership.

At the outset, we note that, as previously set forth herein, the court entered an initial interlocutory order in which it denied the Estate's motion for partial summary judgment, set forth how it proposed to divide the estate, and granted the parties a period in which to attempt their own resolution of these issues. When that attempt failed, the court entered a final and appealable order on October 8, 2010, affirming the findings in the earlier order of September 9, 2009.

■ For purposes of our review, the circuit court's findings of fact shall be re-

would have taken had he not forfeited the right to do so by virtue of his having killed them. In rejecting such an argument, the Court stated,

> There is no plausible reason for giving her father's share of the estates to her uncle, John C. Bates. * *. * The further I go into this matter, the more thoroughly I become convinced that the Legislature intended that 'any person found guilty of murder should not inherit, either by will or otherwise, from the person killed, but should be con-

sidered as though he had preceded in death the person whom he killed.'

In the companion case we held that Robert J. Bates, by the acts of killing his parents, forfeited his right to inherit from either of them. The acts of killing took place immediately before his parents died. By these murderous acts[,] Robert J. Bates forfeited all right to inherit or receive property from his parents.... Robert J. Bates is to be considered as though he had preceded in death his parents whom he killed.

versed only if they are clearly erroneous. *See* CR 52.01. Findings of facts are clearly erroneous only if they are·manifestly against the weight of the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008); *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky.1967). As always, this Court reviews *de novo* the trial court's application of the law to the facts to determine whether its decision was correct as a matter of law. *Payton v. Com.*, 327 S.W.3d 468, 471–72 (Ky.2010).

In reviewing the arguments of the parties, we note that KRS 381.280(1) provides as follows:

> If the husband, wife, heir-at-law, beneficiary under a will, joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent and is convicted therefor of a felony, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he would receive as surviving joint tenant, and the property interest so forfeited descends to the decedent's other heirs-at-law, unless otherwise disposed of by the decedent.

Having reviewed the applicable law, we find that Newton is correct in distinguishing the holdings in both *Bates* and *First*

*Kentucky Trust Co. v. U.S.*, 737 F.2d 557 (6th Cir.1984) [5] from the matter *sub judice*, insofar as both of those cases involved situations in which the murderer and the victim held the property as tenants by the entirety.

 A tenancy by the entirety is a statutory form of ownership created by a conveyance to a husband and wife. A tenancy by the entirety is an estate which is founded upon the legal unity of the husband and wife, which is indivisible in them both as well as in the survivor, but which neither of them can destroy by a separate act. *Hoffmann v. Newell*, 249 Ky. 270, 60 S.W.2d 607 (1932). Thus, those parties to a tenancy by the entirety are indivisibly joined to the property.

 By contrast, joint tenants, as were Newton and Sanders herein, may deal with the property between them as they wish, making decisions as individuals, and not as one entity. Indeed, if one joint tenant decides to convey his or her interest in the property, the joint tenancy is destroyed. Each tenant may deal with the property independently of the other. Essentially, in a tenancy by the entirety, the feature distinguishing it from joint tenancy is that the survivor of a joint tenancy by the entirety takes at the death of the other

---

**5.** In which the Sixth Circuit addressed the circumstances of Mr. and Mrs. Moore, who owned a home with "title vested in them as tenants by the entirety," and in which Mrs. Moore was killed by Mr. Moore. The Court held that the entire value of the residence was properly included in Mrs. Moore's estate since, "Kentucky law bars Mr. Moore from recovering any interest in the residence at the death of his wife by homicide at his hand, but instead requires distribution of the residence to the devisees or heirs at law of Mrs. Moore." In affirming, the federal appellate court stated:

> We turn next to the question of the residence. The habendum clause quoted above has the effect of creating a tenancy by the entirety. At the death of one of the grant-

ees[,] the whole estate belongs to the survivor absolutely. KRS 381.050; *Francis v. Vastine*, 229 Ky. 431, 17 S.W.2d 419 (1929). Once again, however, plaintiff is faced with the insurmountable barrier of Kentucky's Forfeiture Statute, KRS 381.280, supra. Having been convicted of a felony for taking the life of Mrs. Moore, Mr. Moore is barred from asserting any interest he would receive as a surviving tenant. *See Wilson v. Bates*, 313 Ky. 333, 231 S.W.2d 39 (1950); *Bates v. Wilson*, 313 Ky. 572, 232 S.W.2d 837 (1950).

The district court correctly construed the Kentucky forfeiture law. Therefore, the entire value of the residence is a part of the estate of Mrs. Moore.

not by virtue of the death, but because by law each was viewed to own the entire estate from the time of its creation. *Sanderson v. Saxon,* 834 S.W.2d 676 (Ky.1992). In a joint tenancy, however, each is merely entitled to enjoyment of the estate with an interest passing at death to the survivor. *Id.*

*Sub judice,* both Newton and Sanders each had their own separate ownership share and could have conveyed their respective interest in the property whenever and to whomever they chose. Had Sanders conveyed her interest to another, she would be conveying a life estate with a right of survivorship. *See Sanderson, supra.* We are thus in agreement with the Estate, and Newton himself concedes, that by killing Sanders he forfeits his right of survivorship. Thus, the interest which would otherwise have been his but for his criminal act vests in the heirs of Sanders. However, we cannot agree that the statute, as written or interpreted by the courts of this Commonwealth, strips Newton of the ownership of property that was already vested in him. Had Sanders not died at the hand of Newton, he would have taken the entire property as a result of his right of survivorship. Because of the crime he committed, Newton must forfeit that right, which has, we believe correctly, passed to the heirs of Sanders. We believe the result to have been reached in this regard by the trial court to be equitable and in accordance with the law. Accordingly, we affirm.

Wherefore, for the foregoing reasons, we hereby affirm the October 8, 2010, and September 9, 2009, orders of the Nelson Circuit Court.

ALL CONCUR.